UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE COBIAN-PEREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF OAKLAND, et al.,<br><br>    Defendants. | Case No. 13-cv-05162-VC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 45, 46 |

Plaintiff Jorge Cobian-Perez filed suit in California Superior Court against Defendants City of Oakland (the "City"), Oakland Police Department Officers Hector Jimenez, Eric Kim, and Roberto Ruiz, and a number of other defendants, alleging a variety of state-law claims against all defendants. Cobian-Perez's claims arise from an altercation at a grocery store between Cobian-Perez and private security guards employed by Defendant Personal Protective Services ("PPS"), which culminated in Officers Kim and Ruiz issuing Cobian-Perez a citation for battery on one of the guards. In addition to his claims against the individual defendants, Cobian-Perez includes a claim for municipal liability against the City, for failure to train its officers in violation of 42 U.S.C. § 1983. The City removed the case to federal court based on this § 1983 claim. Subsequently, the City and the police officers filed two separate motions for summary judgment: one by the City and Officer Ruiz, the other by Officers Kim and Jimenez. Both motions are granted in full. Further, upon entry of judgment for these four defendants, the case will be remanded to state court. The Court previously stayed proceedings against the remaining defendants, all of which involve state-law claims against private individuals. The Court declines

to exercise supplemental jurisdiction over those claims against those defendants.

## I. Factual Background

Taken in the light most favorable to Cobian-Perez, the relevant facts are as follows. On July 7, 2012, three PPS security guards assigned to patrol the Acorn housing complex in Oakland detained Cobian-Perez inside a grocery store located in the Acorn complex after a cashier suspected that Cobian-Perez had attempted to use a counterfeit $100 bill. The guards handcuffed Cobian-Perez, removed him from the store, placed him in an unmarked vehicle, and took him to a nearby PPS "security shack," also within the complex, where the guards slammed his head into a wall, stomped on him, and slammed him into the ground. Cobian-Perez Decl. ¶¶ 18–19. At some point thereafter, one of the guards called the police, and Officers Ruiz and Kim responded to the security shack within a few minutes. Callahan Supp. Decl., Ex. BB, p. 4–5. PPS guards met the officers at their vehicle as they arrived. Docket No. 45 Ex. B, p. 15. The guards "described [to Officer Kim] an incident . . . where a very intoxicated individual had become disruptive inside the store, had become verbally hostile, calling several of the [guards] the N word. At some point this individual shoved [one of the guards, Defendant Meredith Wilson], at which time they had to physically take him to the ground to detain him." Callahan Decl., Ex. J, p. 7. The police officers then entered the shack. By this point, any "physical interaction" between the guards and Cobian-Perez was "completely done." Docket No. 45, Ex. E, p. 10. Cobian-Perez was sitting in handcuffs on the floor of the shack, bleeding from a cut to the head. The officers asked the guards what happened, and then stepped outside to speak with one of the guards. The officers then returned to the shack and Officer Ruiz took Cobian-Perez, still in handcuffs, to the back of a police vehicle. Cobian-Perez told Officer Ruiz that he wanted to press charges for being beaten. He also told Officer Ruiz that he had passed out after sustaining his head injury. *Id.* at 23. He appeared to both Officers Kim and Ruiz to be at least "somewhat drunk." Docket No. 45, Ex. B, p. 13; *see also* Docket No. 45, Ex. C, p. 8 (stating that, to Officer Ruiz, Cobian-Perez appeared to be "extremely

2

intoxicated."). Seven minutes after arriving at the scene and reporting to dispatch that the scene was secure, the officers called for an ambulance for Cobian-Perez. Callahan Supp. Decl., Ex. BB, p. 4–5. While waiting for the ambulance to arrive, Officer Kim spoke to a cashier at the store, who told Officer Kim that Cobian-Perez, who appeared to the cashier to be intoxicated, had become verbally abusive to the guards and had then attempted to provoke a fight by bumping into and pushing a guard, at which point the guards physically restrained him. Docket No. 45, Ex. B, pp. 17, 26. Officer Ruiz issued Cobian-Perez a citation for misdemeanor assault and battery against Wilson. Within around twenty minutes from the time the officers placed Cobian-Perez in the police car, the ambulance arrived and Cobian-Perez was transported to Kaiser Hospital. Opp. p. 3. Officer Jimenez was the officer assigned to investigate Cobian-Perez's citation for misdemeanor battery. Docket No. 45, Ex. D, p. 4. He had no involvement in any of the events until receiving the case file. Upon receiving the file, Officer Jimenez called Wilson, who was named as the victim in the incident report. *Id.* at 10. Wilson stated he did not wish to pursue the case. Officer Jimenez presented the matter to the District Attorney's Office, which did not charge Cobian-Perez. *Id.* at 15.

## II. Discussion

### A. 42 U.S.C. § 1983 Claim

Cobian-Perez brings a claim against the City, alleging it failed to train its officers in violation of 42 U.S.C. § 1983. A city is liable under § 1983 only where a municipal policy causes a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). And while a city can be liable under § 1983 for inadequate training of its employees, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Thus, in order to defeat the City's motion for summary judgment on his § 1983 claim, Cobian-Perez must first establish a genuine

3

issue of fact that there was an underlying constitutional violation. *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1292 (2014).

Cobian-Perez alleges in his complaint that the City's failure to properly train the officers involved in the case caused the officers to violate his Fourth Amendment rights by illegally searching and seizing him, and by using excessive force to arrest him. FAC ¶¶ 151–53. But Cobian-Perez does not bring any Fourth Amendment claims against the officers themselves. He instead asserts only state-law claims, including false imprisonment, assault and battery, and intentional infliction of emotional distress. *See* FAC ¶¶ 56–82. Indeed, the complaint does not identify any actions by any officer as violating any of his constitutional rights. Furthermore, even assuming that Cobian-Perez could pursue a *Monell* claim against the City without asserting a constitutional claim against the individual officers (*i.e.*, by attempting to prove that they violated his rights as a predicate to the *Monell* claim without bringing actual causes of action against them), he has waived his right to do so here. The defendants served Cobian-Perez with discovery requests, asking him to identify any arguments he intended to make that the officers violated his constitutional rights. Cobian-Perez improperly refused to respond to these requests. Accordingly, Cobian-Perez has lost his opportunity to argue in this case that the officers violated his constitutional rights, and therefore he has lost the opportunity to pursue a *Monell* claim against the City.

In his opposition to the motions for summary judgment, Cobian-Perez for the first time sets forth a theory about how the officers violated his Fourth Amendment rights. Even if Cobian-Perez had not forfeited the right to make this argument, it has no merit. Cobian-Perez now argues that because the guards' initial statements describing the altercation in the grocery store were unreliable, Officers Ruiz and Kim lacked probable cause to arrest him for battery when they placed him in the back of the police car in handcuffs. Opp. p. 8. But there was no Fourth Amendment violation because the twenty-to-thirty minute period in which Officers Ruiz and Kim

4

detained Cobian-Perez before the ambulance arrived did not rise to the level of an arrest.

Under California law, the officers were obliged to accept custody of Cobian-Perez after he had been placed under citizen's arrest by the PPS guards. *Wang v. Hartunian*, 3 Cal. Rptr. 3d 909, 913 (Ct. App. 2003); *see also id.* ("As the attorney general [has] explained, the manifest purpose of the Legislature in imposing this duty was to minimize the potential for violence when a private person restrains another by a citizen's arrest by requiring that a peace officer (who is better equipped by training and experience) accept custody of the person arrested from the person who made the arrest." (internal quotation marks omitted)). But while California law required the officers to accept custody of Cobian-Perez, under the Fourth Amendment the officers required independent probable cause in order to effectuate the guards' citizen's arrest. *See Hopkins v. Bonvicino*, 573 F.3d 752, 774 (9th Cir. 2009).

Here, however, the officers did not arrest Cobian-Perez. They temporarily detained him while investigating the incident, and while waiting for the ambulance to arrive. Once the ambulance arrived, the officers released Cobian-Perez into the care of the paramedics. During this period, which lasted, at most, thirty minutes, Cobian-Perez was handcuffed in the back of a police vehicle. Under the circumstances, this was merely an investigative detention. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968).

"There is no bright-line rule to determine when an investigatory stop becomes an arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). Whether police action constitutes a *Terry* stop or an arrest is determined "by evaluating not only how intrusive the stop was, but also whether the methods used were reasonable given the specific circumstances." *Id.* (emphasis omitted). The Ninth Circuit has recognized that the use of handcuffs "substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop." *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982). But the Ninth Circuit in the same case held that "[a] brief but complete restriction of liberty, if not excessive under the

circumstances, is permissible during a *Terry* stop and does not necessarily convert the stop into an arrest." *Id.*; *see also Washington*, 98 F.3d at 1189 (explaining that the use of "especially intrusive means of effecting a stop" may be justified in "special circumstances, such as 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; [or] 4) where the police have information that a crime that may involve violence is about to occur." (footnotes omitted)).

   Here, the officers had been informed that Cobian-Perez had committed a battery against Wilson. According to the guards' statements, Cobian-Perez had attacked Wilson despite being smaller in stature than Wilson, and despite the presence of two other guards in the store. Given that the officers had been informed there had been a physical altercation between Cobian-Perez and the guards (albeit one where Cobian-Perez came out second best) and that Cobian-Perez appeared to the officers to be intoxicated, it was not unreasonable or excessive for the police officers to take the protective measure of leaving the handcuffs on while they separated Cobian-Perez from the guards. And given that a there had been a violent altercation between Cobian-Perez and the guards shortly before the officers arrived, separating Cobian-Perez from the guards by placing him in the rear of the vehicle while further investigating the situation was not an unreasonable or excessive precaution. Nor was the duration of the detention, which lasted at most thirty minutes, excessive. *See United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996) ("The critical inquiry is whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." (internal quotation marks omitted)). During this time, Officer Kim sought out other witnesses to the events that precipitated the guards' citizen's arrest. He spoke with the cashier at the grocery store, who confirmed the guards' story that Cobian-Perez was the initial aggressor. Cobian-Perez was released from the vehicle and the handcuffs were removed as soon

6

as the ambulance arrived.

What's more, even if the officers' detention of Cobian-Perez did rise to the level of an arrest, that arrest was supported by probable cause.

> The test for whether probable cause exists is whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.

*United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005).

There is no question that the guards' statements to the officers, if trustworthy, were a sufficient basis for the officers to believe that Cobian-Perez had committed a battery against Wilson. Cobian-Perez's argument that the guards' descriptions of the altercation were not trustworthy is not entirely clear. He appears to argue that the guards' accounts were not worthy of credence because Cobian-Perez is smaller than Wilson, Opp. p. 4, and that when the officers arrived, Cobian-Perez was in handcuffs on the floor of the security shack and was bleeding after being beaten by the guards. But even if the guards' account was not in fact an accurate representation of events, the fact that Cobian-Perez was restrained in handcuffs and appeared to have been injured during the altercation did not mean that it was unreasonable for the officers to believe the guards' account. *See Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters."); *cf. Burke v. Cnty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009) (explaining that it is not the ultimate truth of a statement to officers that matters, but rather whether it was reasonable for the officers to believe the statement at the time it was made). While police officers generally cannot rely solely on the claim of a citizen witness that he was a victim of a crime to establish probable cause, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001), "[a] sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe

7

a crime had been committed and the named suspect was the perpetrator." *Peng*, 335 F.3d at 978 (quoting *Fuller*, 950 F.2d at 1444). And by the time the officers detained Cobian-Perez in their vehicle, they were relying not only the statement of the victim, Wilson, but also the corroborating statement of at least one other guard. Callahan Decl., Ex. J, p. 7. Collectively, these statements formed a sufficient basis for a reasonable person to believe that Cobian-Perez had committed a battery against Wilson.

### B.  State-Law Claims

Cobian-Perez brings a host of state-law claims (and only state-law claims) against Officers Ruiz, Kim, and Jimenez. But Cobian-Perez devotes the majority of his opposition to the summary judgment motions to arguing that the officers' conduct violated his Fourth Amendment rights. To the extent that Cobian-Perez appears to now suggest that the Court should construe his state-law cause of action for false imprisonment as a Fourth Amendment claim, the Court declines to do so; as stated above, Cobian-Perez waived the right to pursue that claim by failing to include it in his complaint and by baselessly refusing to respond to discovery requests on the issue. Moreover, for the reasons discussed above, Cobian-Perez would not have a valid Fourth Amendment claim even if he'd made one. And in any event, the officers would be immune from this claim under the doctrine of qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.").

As for his state-law claims against the officers, Cobian-Perez does not challenge the officers' argument that California Penal Code § 847(b)(3) precludes an officer's liability for false arrest or false imprisonment when the officer takes a suspect into custody following a citizen's arrest. *See Arpin*, 261 F.3d at 921. Likewise, Cobian-Perez raises no challenge to the officers'

argument that malicious prosecution and false light claims against peace officers are barred by California Government Code § 821.6.  *See Asgari v. City of L.A.*, 937 P.2d 273, 278 (Cal. 1997); *Gillan v. City of San Marino*, 55 Cal. Rptr. 3d 158, 171 (Ct. App. 2007).  Nor does he challenge or the officers' arguments that he has presented no evidence that any of the officers took money from Cobian-Perez and converted it to their own use, or that California's Unfair Business Practices Act ("UCL") does not apply to them because they are not a "business" within the meaning of the UCL. *Cf. People for the Ethical Treatment of Animals, Inc. v. Cal. Milk Producers Advisory Bd.*, 22 Cal. Rptr. 3d 900, 904 (Ct. App. 2005) (holding that public entities do not fall within the ambit of the UCL).

The arguments Cobian-Perez raises in support of his emotional distress claim are little more than conclusory allegations; he fails to address the officers' contention that, like false prosecution, California law bars emotional distress claims against peace officers.  *See* Cal. Gov't Code § 821.6; *Gillan*, 55 Cal. Rptr. 3d at 171.  Similarly, in response to the officers' argument that California's Unruh Civil Rights Act does not apply because the officers are not a "business establishment," *see* Cal. Civ. Proc. Code § 51, Cobian-Perez offers only conclusory statements, devoid of factual or legal support.  *See Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) ("[A] non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)); *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the opposing party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment."); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").  Cobian-Perez does not so much as address

the officers' argument that he failed to offer any evidence that the officers interfered with his constitutional or statutory rights by threats, intimidation or coercion in violation of California's Bane Act. *See Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 472 (Ct. App. 2007).

Under California law, Cobian-Perez's claim for battery against the officers cannot be established unless he proves that an officer used unreasonable force against him, and that the unreasonable force caused him some harm. *Arpin*, 261 F.3d at 922. The only instance Cobian-Perez identifies as a use of force by any officer is Officer Kim "kind of pushing me with his hand" while escorting Cobian-Perez out of the security shack. No reasonable juror could conclude that this "push" was unreasonable force under the circumstances. And Cobian-Perez produces no evidence that the push caused him any harm. In fact, in his deposition Cobian-Perez stated that the "push" did not even cause him to stumble. Docket No. 45, Ex. E, p. 18.

Finally, in his complaint, Cobian-Perez alleges the officers were negligent for failing to investigate his allegations against PPS. FAC ¶ 119. Once an officer makes a discretionary decision to investigate, discretionary act immunity does not protect the officer if he or she is negligent in conducting the subsequent investigation. *Martinez v. City of L.A.*, 141 F.3d 1373, 1379 (9th Cir. 1998). But Cobian-Perez offers no evidence that the officers made a decision to investigate his claims against the guards and then did so negligently. Rather, in his Opposition Cobian-Perez merely repeats his bare allegation that the officers were negligent for failing to investigate his claims. Indeed, in his Opposition, Cobian-Perez cites a California Supreme Court case, *McCorkle v. City of Los Angeles*, 449 P.2d 453, 460 (Cal. 1969), for the very proposition that the decision whether to investigate is a discretionary one. Opp. p. 16; *see also* Cal. Gov't Code § 820.2 (establishing immunity for discretionary acts).

In his Opposition, Cobian-Perez also alleges for the first time the officers negligently failed to provide prompt medical aid for his head injury. *Id.* But "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall*

10

*Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)); *see also Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006).

Accordingly, the officers are entitled to summary judgment on each of these claims. Because the officers are entitled to summary judgment on each of Cobian-Perez's state-law claims, so too is the City.  *See* Cal. Gov't Code § 815.2.

### III.  Conclusion

The summary judgment motions of the City and the individual police officers are granted. Judgment will be entered in favor of those defendants.  The Court declines to exercise supplemental jurisdiction over the claims against the remaining defendants, and therefore remands the matter to the Alameda County Superior Court.

**IT IS SO ORDERED**.

Dated:  November 5, 2014

_____
VINCE CHHABRIA
United States District Judge

11